IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BART M. GRISSOM, #310364, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-00274-JPG |
| | ) |
| RICHARD WATSON | ) |
| and DAVID MARCOWITZ, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

Plaintiff Bart Grissom, an inmate at St. Clair County Jail, filed this civil rights action pursuant to 42 U.S.C. § 1983 on March 11, 2021. (Doc. 1). Plaintiff complains that he has been subjected to unconstitutional conditions of confinement at the Jail since February 5, 2021. (*Id*. at 1-26). He seeks money damages and preliminary injunctive relief. (*Id*. at 22-23).

The Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints and filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff sets forth the following allegations in the Complaint (Doc. 1, pp. 13-21): Plaintiff has been subjected to unconstitutional conditions of confinement at St. Clair County Jail since February 5, 2021. During intake, he requested medical attention for a pre-existing fracture to his

1

left ankle and right toe.  Plaintiff explained that he sustained further injury to his ankle and/or toe during his arrest.

Instead of providing medical treatment, the booking staff isolated Plaintiff for three days.  Then, Plaintiff was transferred to the infirmary and forced to sleep in a plastic boat on the floor alongside other inmates, insects, and black mold for ten days.  Nearby, inmates regularly coughed and threw up.  Plaintiff developed massive migraines, high blood pressure, difficulty breathing, and generalized pain.  Medical staff did not make regular rounds or dispense medication.  The sinks were clogged, and cleaning supplies were unavailable.  Finally, on February 17, 2021, a nurse examined Plaintiff's ankle for the first time.  The following day, Plaintiff made a verbal complaint to nurses, staff, and the sheriff about the lack of medical attention he had received for his serious health issues from Dr. Marcowitz.

The same day, Plaintiff was removed from the infirmary to B-block (lower level).  The block was overcrowded, housing 42 inmates in a space designed for 32 inmates.  Plaintiff was again forced to sleep on the floor alongside other inmates, insects, and black mold.  The toilets were set to flush hourly, and the cell block wreaked of urine.  Flies infested the area.  The conditions only exacerbated Plaintiff's health problems.

To make matters worse, Plaintiff was attacked by another inmate on February 24, 2021.  A large inmate (standing 6'3" tall and weighing 300 pounds) approached another detainee and punched him in the face before turning to Plaintiff and doing the same.  Following the assault, Plaintiff was transported by wheelchair to an interview room where his injuries were photographed.  He told staff members about his pre-existing fractures and prior recommendation for a bone fusion procedure by an outside provider.  Staff took no action in response to this information.  They forced Plaintiff to walk to AA-block located near a set of stairs.

Dr. Marcowitz finally examined and x-rayed Plaintiff's ankle and foot for the first time on February 25, 2021.  (*Id*. at 14).  The x-ray apparently showed now fractures, but Plaintiff insisted the fractures could only be seen using other tests (*e.g.*, ultrasound or MRI).  The doctor required Plaintiff to return to his cell on foot.  To date, Plaintiff's ankle and toe fractures have not been treated.  He continues to have difficulty walking and suffers from redness, pain, and swelling.

On March 4, 2021, Dr. Gaston evaluated Plaintiff and diagnosed him with PTSD, ADHD, bipolar, depression, and paranoia.  On the same date, Plaintiff was disciplined for his role in the assault that occurred on February 24, 2021.  He was punished with denial of commissary and phone access.  Plaintiff insists he was only acting in self-defense.  He asserts no claim for any constitutional violations arising from his mental health treatment, diagnosis, or discipline.

The Court designates the following claims in the *pro se* Complaint, consistent with Plaintiff's designation of the same:

**Count 1:**   Fourteenth and/or Eighth Amendment claim against Sheriff Watson for subjecting Plaintiff to unconstitutional conditions of confinement at the Jail, including overcrowded housing, lack of bed space, lack of working sinks, exposure to insects, black mold, and no cleaning supplies in the infirmary and cell blocks, which resulted in illness in February and/or March 2021.

**Count 2:**   Fourteenth and/or Eighth Amendment claim against Dr. Marcowitz for denying Plaintiff timely and adequate medical attention for his fractured ankle and toe at the Jail in February and/or March 2021.

**Count 3:**   Fourteenth and/or Eighth Amendment claim against Sheriff Watson and Dr. Marcowitz for subjecting Plaintiff to a serious risk of harm to his health or safety posed by other inmates at the Jail.

**Count 4:**   *Monell* claim against Sheriff Watson for the policy, custom, or widespread practice of negligently responding to inmate medical needs and unsafe conditions at the Jail.

**Any claim in the Complaint that is not addressed herein should be considered dismissed**

**without prejudice as inadequately pled under *Twombly*.**[1]

## Discussion

The applicable legal standard for Plaintiff's claims depends on his status as a convicted prisoner or a pretrial detainee when his claims arose. The Eighth Amendment Cruel and Unusual Punishment Clause governs Plaintiff's claims, if he was a convicted prisoner. *McCann v. Ogle Cty., Illinois,* 909 F.3d 881, 886 (7th Cir. 2018). The Fourteenth Amendment Due Process Clause governs the claims, if he was a pretrial detainee. *Id.* The Eighth Amendment prohibits cruel and unusual punishment of convicted prisoners, and the Fourteenth Amendment prohibits all forms of punishment of pretrial detainees. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Plaintiff does not indicate whether he was a convicted prisoner or pretrial detainee during the relevant time period, so the Court will consider his claims under both standards. Either way, Counts 1 and 2 survive screening, and Counts 3 and 4 do not.

Under both, inmates must have access to "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v. Curan*, 933 F.3d 816 (7th Cir. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). Conditions that deprive an inmate of basic human needs, such as food, water, medical care, sanitation, or safety, may violate the Eighth or Fourteenth Amendment. *Id.*; *James v. Milwaukee*, 956 F.2d 696, 699 (7th Cir. 1992). An Eighth Amendment claim requires a showing that the conditions were sufficiently serious to create an excessive risk to the inmate's health or safety (an objective standard) and also show that each defendant responded to the conditions with deliberate indifference (a subjective standard). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A Fourteenth Amendment claim requires a showing

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

of objective unreasonableness.  *Hardeman*, 933 F.3d at 823 (extending *Kingsley*'s objective inquiry to all conditions-of-confinement claims brought by pretrial detainees).  Under the Fourteenth Amendment, a pretrial detainee must plausibly allege that he endured conditions or medical care that was objectively unreasonable, meaning the defendant acted "purposefully, knowingly, or perhaps even recklessly" in relation to said conditions or care.  *See Ferguson v. Cook County Correctional Facility/Cermak*, 836 F. App'x 438, 441 (7th Cir. 2020) (citing *Miranda v. County of Lake*, 900 F.3d 335, 353 (7th Cir. 2018)).  Negligence does not give rise to a claim under either standard.  *Id*. (citing *Miranda*, 900 F.3d at 353).

Count 1 survives screening against Sheriff Watson under the Eighth or Fourteenth Amendment standard.  Plaintiff describes conditions at the jail that are sufficiently serious and also systemic, such as overcrowding, pest infestations, black mold, and poor sanitation.  (Doc. 1, pp. 13-21).  Plaintiff named Sheriff Watson because he was allegedly aware of the conditions and failed to address them.  *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996); *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) (holding that "defendants such as the Sheriff and the Director of the Jail can realistically be expected to know about or participate in creating systemic jail conditions.").  Knowledge of systemic conditions can be imputed to supervisors and other high-ranking officials, including the sheriff and superintendent.  *See Gray v. Hardy*, 826 F.3d at 1008.  Accordingly, Count 1 shall receive further review against this defendant.

Count 2 likewise survives screening against Dr. Marcowitz.  Plaintiff maintains that the doctor did not examine his foot and toe injury until twenty days after his arrival at the Jail.  This was despite his complaints of additional injuries during his arrest.  The delay allegedly resulted in unnecessary pain and suffering.  After examining and x-raying Plaintiff's foot on February 25, 2021, the doctor instructed him to walk back to his cell without treatment.  Plaintiff complains of

obvious signs of injury, including redness, swelling, and difficulty walking. Given these allegations, Count 2 shall receive further review against Dr. Marcowitz.

Count 3 does not survive screening. Plaintiff's characterization of this claim appears to overlap with Counts 1 and 2. The Court is therefore unclear how this claim is any different from the other two claims. It appears that Plaintiff intended to bring a claim against the defendants for failing to protect him from the inmate assault that occurred on February 24, 2021. However, he offers no allegations suggesting that either defendant knew of any risk of assault in time to prevent the attack from happening on February 24, 2021. Count 3 shall therefore be dismissed without prejudice for failure to state any claim for relief against the defendants.

Count 4 shall also be dismissed. Plaintiff names the sheriff in connection with a policy, custom, or practice of providing negligent medical care and conditions of confinement at the Jail. However, allegations of negligence state no constitutional claim under the Eighth or Fourteenth Amendment. *See Ferguson*, 836 F. App'x at 441 (citing *Miranda*, 900 F.3d at 353). This claim shall be dismissed without prejudice.

### Request for Preliminary Injunction

In the Complaint, Plaintiff indicates that he requires a preliminary injunction for "adequate medical treatment . . . as soon as possible." (Doc. 1, p. 22). He does not indicate whether the treatment is for his ankle/toe injury, his migraines/blood pressure/breathing problems, or some other medical issue. (*Id.*). Therefore, the Court instructed Plaintiff to file a Motion for Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(b), if he wished to pursue a request for interim relief. (*See* Doc. 6) ("Plaintiff should file a separate Motion for Preliminary Injunction Pursuant to Federal Rule of Civil Procedure 65(b) and describe the exact relief he requires and set

forth each of the facts that supports his request for relief. He may file the motion at any time during the pending action.").

Plaintiff did not file a motion for preliminary injunction. On April 7, 2021, he filed a "Response" stating that he needs a left ankle bone fusion. (Doc. 11). He adds that "it needs to be melted back together." (*Id*.) Plaintiff explains that he recently authorized the Jail to request his medical records, but he has not heard whether the Jail has obtained them. (*Id*.). He provides contact information for a foot and ankle specialist. (*Id*.).

When deciding whether to issue a preliminary injunction, the Court must determine whether the plaintiff has demonstrated that (1) he will suffer irreparable harm if he does not obtain the requested relief; (2) traditional legal remedies are inadequate; and (3) he has some likelihood of prevailing on the merits of his claim. *See Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020) (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). If Plaintiff makes this showing, the court must balance the harm to Plaintiff caused by denying the preliminary injunction with the harm to Defendants caused by granting relief. *Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020). The court takes a "sliding scale" approach when balancing these harms; the more likely the plaintiff is to win on the merits, the less the balance of harm needs to weigh in his favor. *Id*. (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).

Plaintiff does not address these facts (particularly, irreparable harm, other legal remedies, or harm to the parties caused by granting relief). He also offers insufficient information for the Court to analyze these factors. Plaintiff simply asks for specific treatment. However, inmates are generally not allowed to demand specific care or the best care possible, and denial of such requests does not necessarily rise to the level of a constitutional violation. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). The Court is left to guess why Plaintiff will suffer irreparable harm without

7

an immediate bone fusion, and the Court is reluctant to address the matter when the Jail is in the process of obtaining medical records to address Plaintiff's request at this time. His request for a preliminary injunction is **DENIED without prejudice**.

### Motions for Recruitment of Counsel

Plaintiff's Motions for Recruitment of Counsel (Docs. 3 and 12) are **DENIED without prejudice**. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). There is no constitutional or statutory right to counsel in federal civil cases. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013); *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). However, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Id*. When considering a request for counsel, the district court must consider whether the plaintiff has made reasonable attempts to secure counsel and, if so, "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt*, 503 F.3d at 655).

Plaintiff has not demonstrated reasonable efforts to find an attorney on his own before seeking the Court's help. In the first motion, Plaintiff discloses no efforts to find an attorney. (Doc. 3, p. 1). In the second motion, Plaintiff states that he wrote to fourteen attorneys in late March and received no responses before filing his second motion. (Doc. 12, p. 3). In other words, he waited only two weeks for responses before seeking the Court's help. Plaintiff did not wait long enough for responses. He must be patient and wait a reasonable amount of time for attorneys or law firms to get back to him. If his requests for representation are declined, Plaintiff may renew his request for counsel. He should attach the responses to his next motion.

Beyond this, Plaintiff appears capable of representing himself in this matter for now. The Complaint survived screening on two claims, each against a single defendant. Plaintiff has demonstrated an ability to articulate his claims coherently and to file timely and organized motions and other pleadings with the Court. Defendants have not been served, and no answers have been filed. No scheduling order is in effect. Until this case moves forward, there is very little for Plaintiff to do. And, at this time, the Court finds that he would not benefit from representation by an attorney. Plaintiff may renew his request as the case progresses—after receiving responses to his outstanding requests for representation. For now, the motions are denied.

### Disposition

**IT IS ORDERED** that the Complaint (Doc. 1) survives preliminary review under 28 U.S.C. § 1915A, as follows:

- **COUNT 1** against **SHERIFF RICHARD WATSON** in his individual capacity; and

- **COUNT 2** against **DOCTOR DAVID MARCOWITZ** in his individual capacity.

**IT IS ORDERED** that the following claims are dismissed without prejudice for failure to state a claim for relief:

- **COUNT 2** against **SHERIFF RICHARD WATSON** and **DOCTOR DAVID MARCOWITZ** is **DISMISSED** without prejudice; and

- **COUNT 4** against **SHERIFF WATSON** is **DISMISSED** without prejudice.

**Because this suit addresses one or more medical claims, the Clerk of Court is DIRECTED to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**IT IS ORDERED** that as to **COUNTS 1** and **2**, the Clerk of Court shall prepare for Defendant **SHERIFF RICHARD WATSON** and **DR. DAVID MARCOWITZ**: (1) Form 5

(Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If any Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not known, that Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **<u>Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.</u>**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days**

after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED**.

**DATED: 4/16/2021**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**

**Notice**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendant will enter her appearance and file an Answer to your complaint. It will likely take at least 60 days from the date of this Order to receive the defendant's Answer, but it is entirely possible that it will take 90 days or more. The Court will then enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, in order to give the defendant notice and an opportunity to respond to those motions. Motions filed before the defendant's counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.